UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

U.S. SPECIALTY INSURANCE CO.                    CIVIL ACTION

V.                                              NO. 18-7741

STRATEGIC PLANNING ASSOCIATES,                  SECTION "F"
LLC, CHARLOTTE W. BURNELL, AND
WILLIAM J. BURNELL

ORDER AND REASONS

Before the Court is the plaintiff's Rule 12(b)(6) motion to dismiss certain causes of action asserted in the defendants' counterclaim. For the reasons that follow, the motion is GRANTED.

**Background**

This indemnity action arises out of the renovation of a New Orleans charter school and the construction disputes that ensued.

In 2013, the Louisiana Department of Education Recovery School District, as owner, entered into a contract with Core Construction Services, LLC, as general contractor, for the renovation of Sophie B. Wright High School. Core, in turn, entered into a subcontract with Strategic Planning Associates, LLC, a Disadvantaged Business Enterprise, for the fabrication and erection of steel for the project. As is customary in the construction industry, the subcontract required SPA to provide bonding to secure the performance of its work and ensure payment

1

to its subcontractors and suppliers. Accordingly, SPA turned to United States Specialty Insurance Company. Serving as surety, USSIC issued a performance bond and a payment bond, naming Core as obligee and SPA as principal.

Months earlier, SPA and its representatives, Charlotte Burnell and William Burnell, had executed a General Indemnity Agreement in favor of USSIC, in which they agreed to "indemnify . . . and hold [USSIC] harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees, and expenses" incurred by USSIC as a result of issuing bonds on behalf of SPA and to reimburse USSIC for any disbursements made by USSIC in good faith. In addition, SPA, as principal, and the Burnells, as indemnitors, assigned to USSIC their "right, title, and interest in . . . any causes of action, claims, demands, or actions of whatsoever kind" that SPA might have against any party to a contract with SPA. Finally, SPA and the Burnells gave USSIC "the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise, litigate, protest, or appeal any claim, demand, suit, award, assessment or judgment on or in connection with any Bond, Bonded Contract, or Contract," and they irrevocably designated USSIC "as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights . . . assigned, transferred and set over to [USSIC] in this Agreement."

As the project fell behind schedule, disputes arose between SPA and Core. First, during the spring of 2015, Core issued a notice to cure, informing SPA that steel shop drawings were still incomplete and that SPA's untimeliness had negatively impacted the project's schedule. Later that summer, Core issued two additional notices to cure, again advising SPA that it was behind schedule. Attributing the delay to Core's mismanagement of the project schedule, SPA promptly informed USSIC of its position. SPA related that the project was delayed from the beginning because the site conditions were not accurately depicted on the project's plans and that Core had breached its obligations to SPA under the subcontract in various ways. Nonetheless, upon Core's request, USSIC agreed to send a representative to supervise SPA's scope of work on the project. And despite representing to SPA that he would act in SPA's best interest, the USSIC representative allegedly began communicating directly with Core regarding SPA's obligations under the subcontract and unilaterally commandeered SPA's subcontractors. It is further alleged that, when Core requested that USSIC formally guarantee timely performance of SPA's work, USSIC advised Core that USSIC's performance obligations were not triggered unless and until Core terminated SPA. According to SPA, Core responded by issuing a notice of termination on December 22, 2015 and making demand upon USSIC under the performance bond that same day.

Disputing the propriety of its termination, SPA urged USSIC to deny Core's claim under the performance bond and advised that it planned to pursue breach of contract claims against Core in excess of $1,000,000.  USSIC initially denied Core's claim under the performance bond, noting that Core had breached the subcontract with SPA in various ways.  In response, Core filed suit against USSIC under the performance bond, alleging damages in the principal sum of $1,443,581.79 and additional damages for bad faith; Core also filed an arbitration demand against SPA, seeking more than $1,000,000 in damages.[1]  Faced with a lawsuit, USSIC chose to settle.

Pursuant to a settlement agreement dated May 12, 2017, USSIC paid Core $450,000, settled the claims asserted by Core against USSIC and SPA, and waived SPA's rights against Core.  Thereafter, the performance bond suit between Core and USSIC and the arbitration between Core and SPA were dismissed.  In dismissing Core's claims against SPA, the arbitrator held that USSIC had the right and authority under the General Indemnity Agreement to settle all causes of action between the parties.[2]  In the meantime, many

---

[1] In the performance bond suit against USSIC, Core alleged that SPA breached the subcontract by failing to perform in accordance with Core schedules, to submit an updated recovery schedule, to furnish materials in a timely manner, to deliver structural and decorative steel, and to submit required documentation.

[2] SPA appealed the arbitrator's ruling, which was upheld by the Orleans Parish Civil District Court, as well as the Louisiana Fourth Circuit Court of Appeals

of SPA's subcontractors and suppliers asserted claims against USSIC under the payment bond for work performed on and materials supplied for the project. Based on those claims, USSIC paid SPA's subcontractors and suppliers approximately $720,438. USSIC also retained a consultant and two law firms to assist in investigating and defending the claims asserted under the performance and payment bonds.

On August 15, 2018, USSIC filed this lawsuit against SPA, Charlotte Burnell, and William Burnell pursuant to the General Indemnity Agreement. In its complaint, USSIC seeks $1,339,756.09 in damages plus all additional losses, attorneys' fees, costs, and expenses incurred as a result of having executed the bonds; interest from the date payments were made by USSIC; and all costs of these proceedings. In response, SPA and the Burnells filed a counterclaim against USSIC, asserting the following causes of action: (1) bad faith breach of the General Indemnity Agreement; (2) bad faith breach of the performance bond; (3) bad faith breach of the payment bond; (4) bad faith breach of fiduciary duty; (5) detrimental reliance; and (6) liability for SPA's claims against Core.[3] USSIC now moves under Federal Rule of Civil Procedure

---

[3] With respect to damages, the defendants allege a loss of business assets, goodwill, bonding capacity, future business earnings, and the opportunity to seek redress against Core for Core's numerous contractual breaches.
    Specifically, they allege that Core breached the subcontract by: (1) failing to honor its heightened obligations to SPA (as a

12(b)(6) for partial dismissal of the defendants' counterclaim, contending that there exist no causes of action against USSIC under Louisiana law for bad faith breach of the General Indemnity Agreement, bad faith breach of the performance bond, bad faith breach of the payment bond, or bad faith breach of a fiduciary duty.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. <u>See</u> <u>Lowrey v. Tex. A & M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997) (quoting <u>Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.</u>, 677 F.2d 1045, 1050 (5th Cir. 1982)).

---

Disadvantaged Business Enterprise); (2) failing to properly manage the project; (3) unilaterally changing the agreed upon schedule of values; (4) requiring SPA to coordinate drawing with other divisions and requiring SPA to retain a professional engineer; (5) refusing to pay SPA on the first pay-application; (6) improperly issuing a default and cure notice on March 17, 2015; (7) issuing an improper default notice in August of 2015; (8) failing to pay SPA for delays to the project; (9) failing to pay SPA for extra work that Core demanded SPA perform; (10) continually failing to pay SPA throughout the project's duration; (11) usurping SPA's role and commandeering SPA's subcontractors; (12) refusing to allow SPA's project managers to perform their work; (13) misrepresenting the payment situation to SPA's subcontractors and suppliers; and (14) improperly terminating SPA in bad faith.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Stated differently, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Id. at 502-03 (citing Iqbal, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted). "Factual allegations must be enough to

raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the

complaint by reference, and matters of which a court may take judicial notice.'" Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

## II.

As a threshold matter, the Court notes that USSIC's motion to dismiss only challenges four of the causes of action asserted in the defendants' counterclaim and does not address the defendants' detrimental reliance claim or allegation that USSIC is liable for SPA's claims against Core.[4] Accordingly, in deciding this motion, the Court's analysis is restricted to whether or not the defendants have stated a claim for bad faith breach of the General Indemnity Agreement, bad faith breach of the performance bond, bad faith breach of the payment bond, or bad faith breach of a fiduciary duty.

## III.

The Court first considers the defendants' claims that USSIC breached its obligations to SPA under the performance and payment

---

[4] In its motion to dismiss, USSIC states:

> [T]here exist no causes of action against USSIC for bad faith breach of the GIA, bad faith breach of the performance bond, bad faith breach of the payment bond, or bad faith breach of a fiduciary duty. As such, these causes of action should be dismissed with prejudice.

bonds in bad faith.  Specifically, the defendants allege in their counterclaim that, under the terms of the performance bond and the payment bond, USSIC owed SPA duties of good faith and fair dealing and was precluded from taking commercially unreasonable actions and acting in bad faith with SPA.  Nonetheless, the defendants complain, USSIC breached such obligations in bad faith.  In its motion to dismiss, USSIC contends that USSIC owes no obligations to SPA or the Burnells under the performance or payment bonds, and that these causes of action therefore should be dismissed with prejudice.

*A.*

Under Louisiana law, "[s]uretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." La. Civ. Code art. 3035.  Accordingly, "[a] suretyship contract is unilateral; it obligates the surety to the creditor and imposes a contractual obligation on the surety to the creditor."  Michael H. Rubin, Ruminations on Suretyship, 57 La. L. Rev. 567, 568 (1997).  Although the principal obligor (or debtor) is not a party to the contract of suretyship, the surety nonetheless has certain rights against him.  See La. Civ. Code arts. 3047-3049.  Notably, "[a] surety has the right of subrogation, the right of reimbursement, and the right to require security from the principal

obligor." Id. art. 3047. However, the surety's right of reimbursement is not absolute:

> A surety who in good faith pays the creditor when the principal obligation is extinguished, or when the principal obligor had the means of defeating it, is nevertheless entitled to reimbursement from the principal obligor if the surety made a reasonable effort to notify the principal obligor that the creditor was insisting on payment or if the principal obligor was apprised that the creditor was insisting on payment.

Id. art. 3050. In other words, article 3050 provides that the surety's right of reimbursement against the principal obligor is not affected where the surety pays a principal obligation that it should not have paid, so long as the payment was made in good faith, and the principal obligor knew that the creditor was insisting on payment. Accordingly, a surety's bad faith payment gives the principal obligor a defense to the surety's right of reimbursement but does not give the principal obligor an independent cause of action against the surety. Moreover, the mere existence of a suretyship contract does not impose fiduciary duties upon the surety in favor of the principal. See Abbott v. Equity Grp., Inc., No. 86-4186, 1990 WL 3152, at *5 (E.D. La. Jan. 5, 1990), amended, No. 86-4186, 1990 WL 32979 (E.D. La. Mar. 20, 1990) ("In general, a surety does not owe a fiduciary duty to its principal . . . .") (internal citations omitted).

*B.*

In this case, SPA was required by Core to provide bonding to secure the performance of its subcontract work and ensure payment to its subcontractors and suppliers. As a result, USSIC, as surety, issued performance and payments bonds with SPA, as principal, and Core, as obligee (or creditor). Accordingly, the bonds constitute suretyship contracts, under which USSIC bound itself to fulfill SPA's performance obligations to Core and payment obligations to SPA's subcontractors and suppliers upon the failure of SPA to do so. See La. Civ. Code art. 3035.

In an attempt to establish that USSIC breached its obligations to SPA under the performance and payment bonds, the defendants allege in their counterclaim:

- Under the express terms of the Payment Bond, USSIC is expressly prohibited from paying any entity other than a "Claimant."
- Under the Payment Bond, no "Claimant" shall be entitled to recovery against USSIC unless a "Claimant" gives written notice to SPA, CORE, and USSIC within 90 days after such Claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made . . . .
- Under the Payment Bond, USSIC had the right to assert any and all defenses that SPA might have to any claim against the Payment Bond.
- Under the Performance Bond, USSIC was prohibited from performing any obligations if CORE was in default of the subcontract.
- CORE was in breach of and in default of the Subcontract as early as the Spring of 2015.

However, in reviewing USSIC's motion to dismiss, this Court must also consider the text of the performance and payment bonds, as these documents are "incorporated into the [counterclaim] by reference." See Funk, 631 F.3d at 783 (quoting Tellabs, Inc., 551 U.S. at 322). The plain terms of the performance and payment bonds reveal that these suretyship contracts impose no obligations upon USSIC in favor of SPA or the Burnells. For example, the payment bond obligates USSIC to pay a "Claimant" when certain conditions are met. In a similar vein, the performance bond provides that USSIC's "obligations and undertakings hereunder shall arise only in the event that the Obligee is not itself in default or breach of any provision or provisions of the [subc]ontract." In other words, the bonds do nothing more than enumerate conditions under which USSIC's obligations to pay Core or SPA's subcontractors and suppliers are triggered. Because USSIC owes no obligations to SPA or the Burnells under the plain terms of the performance or payment bonds, the defendants have failed to state a claim for bad faith breach of such contracts.

IV.

The Court next considers the defendants' claim that USSIC breached the General Indemnity Agreement in bad faith. In this regard, the defendants allege in their counterclaim that, under the terms of the General Indemnity Agreement, USSIC owed SPA duties of good faith and fair dealing and that USSIC breached such

13

obligations in bad faith.  Once again, the Court agrees with USSIC that the General Indemnity Agreement imposes no obligations upon USSIC in favor of the defendants, such that there can be no affirmative claim for bad faith breach of such agreement.

*A.*

A "contract of indemnity forms the law between the parties and must be interpreted according to its own terms and conditions." Abbott v. Equity Group, Inc., 2 F.3d 613, 626 (5th Cir. 1993) (quoting Commercial Union Ins. Co. v. Melikyan, 430 So. 2d 1217, 1221 (La. App. 1 Cir. 1983)).  Moreover, Louisiana jurisprudence has consistently recognized a distinction between a contract of indemnity and a contract of suretyship: "In an indemnity contract, the principal and indemnitors can be bound to the surety in any manner they elect in consideration of the surety issuing the bond covering the principal obligation."  Id.; see also Liem v. Austin Power, Inc., 569 So. 2d 601, 608 (La. App. 2 Cir. 1990) (emphasizing that an indemnity agreement is designed "to allocate the risk inherent in the activity between the parties to the contract.").

*B.*

In this case, SPA, as principal, and the Burnells, as indemnitors, executed the General Indemnity Agreement in favor of USSIC, as surety.  As such, the indemnity agreement forms the law between the parties.  See Abbott, 2 F.3d at 626.  In their

counterclaim, the defendants assert a plethora of factual allegations regarding USSIC's bad faith, such as USSIC's usurpation of SPA's work under the subcontract, misrepresentations to SPA regarding USSIC's intentions, enticement of Core to terminate SPA, and arbitrary settlement of SPA's claims against Core. However, these factual allegations do not identify a single obligation owed by USSIC to SPA or the Burnells under the indemnity agreement.

Moreover, its plain terms reveal that USSIC indeed owes no obligation in favor SPA or the Burnells pursuant to that agreement.[5]  In this case, the indemnity agreement unambiguously

---

[5] **III. INDEMNITY, EXONERATION, AND HOLD HARMLESS**

In the event of any payment of any kind by the Surety, **the Principal and Indemnitor further agree that the liability of the Principal and Indemnitor shall extend to and include, and the Surety shall be entitled to charge and recover for, any and all disbursements made by it in Good Faith** under the belief that: (1) any Principal or Indemnitor is or has been in default under or pursuant to this Agreement; or (2) the Surety was or might be liable to pay the claims asserted or the sums paid, whether or not such liability actually existed; or (3) such payments were or are necessary or expedient, in the Surety's sole and absolute discretion, to protect any of the Surety's rights or interests or to avoid or lessen the Surety's liability or alleged liability, whether or not such liability, necessity or expediency actually existed . . . .

**IV. Assignment**

A. As security for all of the provisions of this Agreement and any other indebtedness or liabilities of the Principal and Indemnitor to the Surety, whenever and

15

however incurred, the Principal and Indemnitor do hereby assign, transfer, pledge, convey and set-over to the Surety the property, rights, and entitlements, and any proceeds thereof, whether such property, rights, entitlements or proceeds shall be now owned or hereafter acquired, described herein below:

. . .

6. All right, title and interest of any Principal or Indemnitor in and to any causes of action, claims, demands, or actions of whatsoever kind or nature which any Principal may have or acquire against any party to any Contract, or causes of action, claims, demands, or actions of whatsoever kind or nature arising out of or connected with any Contract, including but not limited to, actions against any owner, obligee, design professional, subcontractor, supplier, laborer, material man or any other person or entity performing or providing labor, materials or services in connection with any work called for in connection with any Contract.

## VI. ATTORNEY IN FACT

The Principal and Indemnitor hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of such Principal and Indemnitor assigned, transferred and set over to the Surety in this Agreement, and in the name of such Principal and Indemnitor to make execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect to the Surety under all other provisions of this Agreement.

## IX. SETTLEMENTS

**The Surety shall have the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise or appeal any claim, demand, suit, award or judgment on or in connection with any Bond or Bonded Contract.** If, however, any Principal or Indemnitor desires that any claim, demand, suit, award, or judgment be defended, resisted or litigated, or that any judgment, award or assessment against any Principal or the Surety be appealed or protested, such Principal or Indemnitor shall:

indicates that SPA, as principal, and the Burnells, as indemnitors, assigned to USSIC their "right, title, and interest in . . . any causes of action, claims, demands, or actions of whatsoever kind" that SPA might have against any party to a contract with SPA.  The plain language of the indemnity agreement also demonstrates that SPA and the Burnells irrevocably designated USSIC "as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights assigned, transferred and set over to [USSIC by SPA and the Burnells] in this Agreement."  And it further gives USSIC "the right, in its sole and absolute discretion, to .

---

A. Give written notice to the Surety to this effect by certified or registered mail; and

B. Simultaneously therewith, deposit with the Surety, cash, securities or other collateral, in form and amount acceptable to the Surety in its sole and absolute discretion, to completely cover the Surety's exposure or perceived exposure to any loss, cost or expense for which the Surety is entitled to exoneration, indemnification or reimbursement pursuant to this Agreement . . . . The Principal and/or Indemnitor's performance of both sub-Section A and B of this Section IX shall be an absolute condition precedent to the right of the Principal and/or Indemnitor to challenge the Surety's Good Faith with respect to settlement of any claims against the Surety.  The Principal and/or Indemnitor's performance of both sub-Sections A and B of this Section IX shall not, however, in any way diminish the right of the Surety to compromise, settle, pay, or otherwise discharge any claim, demand, suit, award or judgment in its sole and absolute discretion, subject only to its obligation of Good Faith as provided herein.

. . settle . . . any claim, demand, suit, award, assessment, or judgment in connection with any Bond, Bonded Contract, or Contract." Because USSIC owes no obligations to SPA or the Burnells under the General Indemnity Agreement, the defendants have not stated a claim for bad faith breach of that agreement.

V.

The Court finally considers the defendants' claim that USSIC breached its fiduciary duty to SPA in bad faith. Specifically, the defendants allege that USSIC owed a fiduciary duty to SPA when utilizing its power of attorney to settle SPA's claims against Core and that USSIC breached its fiduciary duty when it arbitrarily and capriciously settled such claims. In so arguing, the defendants contend that the power of attorney contained in the General Indemnity Agreement constitutes a mandate under Louisiana law.

A.

Pursuant to the Louisiana Civil Code, "[a] mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." La. Civ. Code art. 2989. The Code further provides that "[t]he mandatary is bound to fulfill with prudence and diligence the mandate he has accepted." Id. art 3001. A fiduciary relationship, in turn, is a "special relationship of confidence or trust imposed by one in another who undertakes to

18

act primarily for the benefit of the principal in a particular endeavor." See *Scheffler v. Adams and Reese, LLP*, 06-1774 (La. 2/22/07), 950 So. 2d 641, 647-48). In light of the similarity between mandatary and fiduciary relationships, Louisiana courts have recognized that "a mandatary owes fiduciary duties to the principal." See *Sampson v. DCI of Alexandria*, 07-671 (La. App. 3 Cir. 10/31/07); 970 So. 2d 55, 59.

*B.*

In their opposition papers, the defendants contend that the power of attorney in the General Indemnity Agreement operates as a mandate, authorizing USSIC to settle claims on behalf of SPA, while simultaneously imposing a fiduciary duty upon USSIC in favor of its principal. The Court disagrees.

First, the Court questions whether the rights granted to USSIC under the General Indemnity Agreement establish a mandate under Louisiana law. As previously discussed, a mandate is a contract under which a person confers authority on another to transact business *for* the principal. See La. Civ. Code. art. 2989. Here, the "Attorney-in-Fact" section of the General Indemnity Agreement provides:

> The Principal and Indemnitor hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of such Principal and Indemnitor assigned, transferred and set over to the Surety in this Agreement, and in the name of such Principal and Indemnitor to make execute, and

19

deliver any and all additional or other assignments, documents or papers **deemed necessary and proper by the Surety in order to give full effect to the Surety under all other provisions of this Agreement**. (emphasis added).

Accordingly, this power of attorney provision allows USSIC to carry out the rights assigned to it by the defendants for USSIC's own benefit. Unlike a mandate, this provision does not require USSIC to undertake any performance. Cf. La. Civ. Code art. 3001 ("The mandatary is bound to fulfill with prudence and diligence the mandate he has accepted. He is responsible to the principal for the loss that the principal sustains as a result of the mandatary's failure to perform.").

Moreover, even if the power of attorney did constitute a mandate, the Court notes that the relationship between USSIC and the defendants is nonetheless governed by the terms of the General Indemnity Agreement. As emphasized by the Louisiana First Circuit Court of Appeals in Commercial Union Insurance Co. v. Melikyan: "[The indemnitor] fails to recognize . . . that this is a suit on a contract of indemnity, not on suretyship. The contract of indemnity forms the law between the parties and must be interpreted according to its own terms and conditions." 430 So. 2d at 1221. Here, in executing the General Indemnity Agreement, the defendants gave USSIC "the right, **in its sole and absolute discretion**, to . . . settle . . . any claim, demand, suit, award, assessment, or judgment in connection with any Bond, Bonded Contract, or

20

Contract." (emphasis added).  Because USSIC has the right, in its sole and absolute discretion, to settle SPA's claims, it follows that USSIC owes no fiduciary duty to SPA in carrying out that right.  Because USSIC owes no fiduciary duty to SPA or the Burnells, the defendants have failed to state a claim against USSIC for bad faith breach of a fiduciary duty.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the plaintiff's motion to dismiss is hereby GRANTED.  IT IS FURTHER ORDERED: that the defendants' claims for bad faith breach of the General Indemnity Agreement, bad faith breach of the performance bond, bad faith breach of the payment bond, and bad faith breach of fiduciary duty are hereby DISMISSED with prejudice.  The defendants' claims against USSIC for detrimental reliance and liability for SPA's claims against Core remain before the Court.


New Orleans, Louisiana, January 23, 2019

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE